**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER D. BAILEY, et al., | |
| Plaintiffs, | Civil Action No. 2:11-CV-0554 |
| v. | |
| UNITED STATES ENRICHMENT CORPORATION and SEVERANCE PLAN FOR SALARIED EMPLOYEES OF UNITED STATES ENRICHMENT CORPORATION, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants United States Enrichment Corporation and Severance Plan for Salaried Employees of United States Enrichment Corporation, by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6), respectfully move to dismiss Plaintiffs' Second Amended Complaint with prejudice and request all appropriate relief, including (but not limited to) attorneys' fees and costs.

As grounds therefore and pursuant to Local Civil Rule 7.2(a)(1), Defendants respectfully refer the Court to the accompanying Memorandum of Law in support of this Motion.

Dated: March 9, 2012                         Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Jeremy P. Blumenfeld
        Jeremy P. Blumenfeld (Trial Counsel)
        1701 Market Street
        Philadelphia,  PA 19103-2921
        Telephone:  215.963.5258
        Facsimile:  215.963.5001
        jblumenfeld@morganlewis.com

        Donald L. Havermann (admitted *pro hac vice*)
        Simon J. Torres (admitted *pro hac vice*)
        1111 Pennsylvania Avenue, N.W.
        Washington, D.C.  20004
        Telephone:  202.739.3000
        Facsimile:  202.739.3001
        dhavermann@morganlewis.com
        storres@morganlewis.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| CHRISTOPHER D. BAILEY, et al., | |
| Plaintiffs, | Civil Action No. 2:11-CV-0554 |
| v. | |
| UNITED STATES ENRICHMENT CORPORATION and SEVERANCE PLAN FOR SALARIED EMPLOYEES OF UNITED STATES ENRICHMENT CORPORATION, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Dated: March 9, 2012

Jeremy P. Blumenfeld (Trial Counsel)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  215.963.5258
Facsimile:  215.963.5001
jblumenfeld@morganlewis.com

Donald L. Havermann (admitted *pro hac vice*)
Simon J. Torres (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  202.739.3000
Facsimile:  202.739.3001
dhavermann@morganlewis.com
storres@morganlewis.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ......................................................................... 3

III.  ARGUMENT .................................................................................................. 4

    A.   Legal Standard of Review for a Motion to Dismiss .............................. 4

    B.   Plaintiffs' Claims Fail as a Matter of Law ............................................ 4

        1.   The Plan Should Be Dismissed Because It Is a Not Proper Party
            Defendant ....................................................................................... 4

        2.   The Claim For Benefits Under ERISA (Count One) Fails to State a
            Claim Upon Which Relief Can Be Granted .................................... 6

        3.   The Breach of Fiduciary Duty Claim (Count Two) Fails To State A
            Claim Upon Which Relief Can Be Granted .................................. 15

        4.   The ERISA § 510 Claim (Count Three) Fails to State a Claim
            Upon Which Relief Can Be Granted ............................................ 17

IV.  CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Avondale Indus., Inc.*,
    905 F.2d 943 (6th Cir. 1990) .........................................................................................7

*Antolik v. Saks, Inc.*,
    463 F.3d 796 (8th Cir. 2006) .......................................................................................13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................4

*Cigna Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ...............................................................................10, 14, 15

*Coomer v. Bethesda Hosp., Inc.*,
    370 F.3d 499 (6th Cir. 2004) ..................................................................................5, 18

*Costantino v. TRW, Inc.*,
    13 F.3d 969 (6th Cir. 1994) ....................................................................................10, 11

*Cutting v. Jerome Foods, Inc.*,
    820 F. Supp. 1146 (W.D. Wis. 1991) ...........................................................................7

*Dozier v. Sun Life Assur. Co. of Can.*,
    466 F.3d 532 (6th Cir. 2006) ......................................................................................12

*Hamilton v. Air Jamaica, Ltd.*,
    945 F.2d 74 (3d Cir. 1991)......................................................................................7, 16

*Hill v. Blue Cross and Blue Shield of Mich.*,
    409 F.3d 710 (6th Cir. 2005) ......................................................................................11

*Hollowell v. Cincinnati Ventilating Co.*,
    711 F. Supp. 2d 751 (E.D. Ky. 2010) ........................................................................5, 6

*Hooven v. Exxon Mobil Corp.*,
    465 F.3d 566 (3d Cir. 2006).........................................................................................7

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990).....................................................................................................18

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
    370 F.3d 1065 (11th Cir. 2004) ..................................................................................13

-ii-

*Korotynska v. Metro Life Ins. Co.*,
    474 F.3d 101 (4th Cir. 2006) ......................................................................13

*Kress v. FELRA Health and Welfare Fund*,
    285 F. Supp. 2d 678 (D. Md. 2003) .............................................................17

*Little v. UNUM Provident Corp.*,
    196 F. Supp. 2d 659 (S.D. Ohio 2002) .........................................................5

*Malaney v. AT&T Umbrella Benefit Plan No. 1*,
    Case No. 2:10-cv-401, 2010 U.S. Dist. LEXIS 130029 (S.D. Ohio Dec. 9, 2010) .................11

*Marks v. Newcourt Credit Group*,
    342 F.3d 444 (6th Cir. 2003) .............................................................8, 12, 14

*Massachusetts Mutual Life Insurance Co. v. Russell*,
    473 U.S. 134 (1985) .....................................................................................17

*McGuire v. International Paper Co. Retiree Service Ctr.*,
    Case No. 1:09-cv-740, 2011 U.S. Dist. LEXIS 25148 (S.D. Ohio Jan. 28, 2011) .................13

*McGuire v. International Paper Co. Retiree Service Ctr.*,
    2011 U.S. Dist. LEXIS 24823 (S.D. Ohio Mar. 10, 2011) ...........................13

*Musto v. Am. Gen. Corp.*,
    861 F.2d 897 (6th Cir. 1988) .........................................................................5

*Naumann v. Abbott Labs.*,
    2012 U.S. App. LEXIS 2086 (7th Cir. Feb. 3, 2012) ....................................19

*QSI-Fostoria DC, LLC v. Gen. Elec. Capital Bus. Asset Funding Corp.*,
    No. 3:02-cv-7466, 2005 U.S. Dist. LEXIS 521 (N.D. Ohio Jan. 14, 2005) ....................14, 15

*Sedlack v. Braswell Servs. Group, Inc.*,
    134 F.3d 219 (4th Cir. 1998) .......................................................................17

*Smith v. Ameritech*,
    129 F.3d 857 (6th Cir. 1997) .......................................................................18

*Tackett v. M&G Polymers USA, LLC*,
    561 F.3d 478 (6th Cir. 2009) .............................................................12, 13, 16

*Tolson v. Avondale Industries, Inc.*,
    141 F.3d 604 (6th Cir. 1998) ...................................................................13, 16

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ...............................................................................12, 16

*Weiner v. Klais and Company, Inc.*,
    108 F.3d 86 (6th Cir. 1997) .................................................................................17

*Wilkins v. Baptist Healthcare Sys. Inc.*,
    150 F.3d 609 (6th Cir. 1998) ................................................................12, 13, 16

*Wray v. Fleck*,
    Case No. C-1-08-852, 2010 U.S. Dist. LEXIS 21196 (S.D. Ohio Mar. 9, 2010)..............13, 17

**STATUTES**

29 U.S.C. § 1003(21) ...............................................................................................5

29 U.S.C. § 1104(a)(1)(D) ......................................................................................16

29 U.S.C. § 1109...................................................................................................5, 17

29 U.S.C. § 1132(a)(1)(B) ......................................................................................10

29 U.S.C. § 1140.......................................................................................................17

**OTHER AUTHORITIES**

2 D. Dobbs, Law of Remedies § 11.6(1), (2d ed. 1993)...........................................15

I.    **INTRODUCTION**

This is a law suit about severance benefits.  Plaintiffs Christopher Bailey, Thomas A. Kramer, and Bret Collier ("Plaintiffs") claim on behalf of themselves and other putative class members that they are entitled to receive them.  Defendants assert that they are not entitled to severance benefits.

Plaintiffs are former salaried employees of United States Enrichment Corporation (the "Company") who transitioned their employment from the Company to Fluor-B&W Portsmouth, LLC ("FBP") after the Department of Energy awarded the Company's decontamination and decommissioning contract to FBP, a different government contractor.  (SAC ¶ 6, 28).  Although they are now employed by FBP, Plaintiffs report to the same plant, have the same job duties and responsibilities with the same pay, and have the same work colleagues that they had while employed by the Company.  The only real change they see is the name of the employer on their paycheck.

Plaintiffs seek severance benefits from the Company's severance plan – the Co-Defendant "Severance Plan for Salaried Employees of United States Enrichment Corporation" (the "Plan," which is attached to the Second Amended Complaint ("SAC") as Exhibit A, Dkt. 26-1).  Unfortunately for Plaintiffs, the Plan does not support their claims.  The Plan provides that severance benefits are discretionary.  Unlike traditional pension and medical benefit plans that contain complex eligibility and payment rules, the Plan very simply – and legally – leaves the determination of eligibility for severance benefits and the amount of severance benefits that will be paid up to the sole discretion of the Company.  Here, the Company lawfully exercised that discretion to decide that severance benefits will not be paid to salaried employees who received job offers from FBP.  Plaintiffs' claims are fundamentally flawed for that reason and for a number of other reasons identified below.

To start, the Plan is not a proper party defendant in this suit.  In the Sixth Circuit, the proper party defendant in an ERISA action for benefits is the party that is shown to control administration of the benefit plan.  The claims against the Plan should be dismissed for this reason.

The claims against the Company fail for a host of other reasons as well.[1]  Count One of the SAC purports to be a claim for benefits under ERISA.  Count One must be dismissed for the following reasons:

- As noted, the Plan expressly provides that "[t]he Company has the sole discretionary authority to determine who is eligible for severance benefits," and the Company has determined that salaried employees who are offered employment with FBP will not receive severance.  Plaintiffs cannot state a claim of entitlement to severance benefits on these undisputed facts.

- Plaintiffs' purported reliance on an external human resources document, titled "Human Resources Administration Termination of Employment Revision" (SAC Ex. B, hereafter the "HR Document") does not save Plaintiffs' claim because the HR Document is not the Plan and, as a matter of law, cannot control the payment of benefits under the Plan.

- Unlike Plaintiffs Kramer and Collier, Plaintiff Bailey has not exhausted his administrative remedies under the Plan.  His claim must be dismissed because exhaustion is a requirement for ERISA welfare benefit plans like the severance Plan here.

- Plaintiffs' claim for benefits under ERISA § 502(a)(3) fails because benefit claims under ERISA must be brought under ERISA § 502(a)(1)(B) and because Plaintiffs have not otherwise stated a cognizable claim for relief under § 502(a)(3).

Count Two of the SAC purports to be an ERISA claim for breach of fiduciary duty.  Count Two must be dismissed because it is impermissibly duplicative of Plaintiffs' ERISA claim for severance benefits and because it improperly attempts to characterize an entirely discretionary and lawful decision not to offer severance benefits as a breach of fiduciary duty.

---

[1]  To the extent the Court concludes the Plan is a proper party defendant, the claims against the Plan fail for the same reasons that they fail against the Company.

Count Three of the SAC purports to be a claim under ERISA § 510 alleging interference with protected rights. Count Three fails because there are no allegations that the Company initiated an employment action for the purpose of depriving Plaintiffs of an ERISA benefit. Furthermore, there are no allegations that demonstrate Company intent to violate ERISA and no allegations of a causal connection between an employment action and the nonpayment of severance benefits. For all of these reasons, more fully explained herein, the SAC should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

The SAC alleges that the U.S. Department of Energy (DOE), on or about August 2010, awarded a contract for the decontamination and decommissioning of the Company's facility in Portsmouth, Ohio to FBP, another federal government contractor. (SAC ¶ 28). The SAC also alleges that the Company began releasing employees in stages from the Portsmouth facility and that FBP began reemploying many of "[the Company's] former employees." (SAC ¶¶ 29-30). Further, the SAC asserts that FBP plans to reemploy other "soon-to-be released [Company] employees pursuant to certain agreements with the [DOE] and statutory requirements." (SAC ¶ 30). Plaintiffs worked for the Company at the Portsmouth facility and were affected by the change in government contractors at the facility. (SAC ¶¶ 7, 13, 28). The SAC asserts that the Plan covers Plaintiffs and that Plaintiffs are entitled to receive severance benefits from the Plan as a result of their transition to employment at FBP. (SAC ¶ 7). The SAC further asserts that Defendants "have declared" that they will not pay severance benefits to Plaintiffs or to others who have transitioned or will transition their employment to FBP. (SAC ¶¶ 57-58, 93). Exhibit F to the SAC is the Company's August 2010 communication to salaried employees at Portsmouth explaining why the Company exercised its discretion to not pay severance benefits in connection with the FBP transition. (SAC Ex. F, Dkt. 26-6).

Plaintiffs Kramer and Collier filed administrative appeals of the Company's decision to not pay severance benefits.  (*See* SAC Exs. G-N, Dkt. 26-7 – 26-14).  Both appeals were denied.  (SAC Exs. K-N, Dkt. 26-11 – 26-14).  The SAC does not allege that Plaintiff Bailey filed an administrative appeal.

## III.  ARGUMENT

### A.  Legal Standard of Review for a Motion to Dismiss

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted when a complaint's factual allegations are not substantial enough "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).  A complaint must contain allegations that "nudge" its claims "across the line from conceivable to plausible" in order to survive dismissal under Rule 12(b)(6).  *Iqbal*, 129 S. Ct. at 1950-51; *Twombly*, 550 U.S. at 570.

This pleading requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" – indeed, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  In assessing the sufficiency of a claim, the Court must disregard conclusory statements that are unsupported by the facts set forth in the complaint or legal conclusions.  *Iqbal*, 129 S. Ct. at 1949.

### B.  Plaintiffs' Claims Fail as a Matter of Law

#### 1.  The Plan Should Be Dismissed Because It Is a Not Proper Party Defendant.

The Plan is not a proper party defendant to Counts One, Two, or Three of the SAC and,

therefore, should be dismissed from this case.  Sixth Circuit law holds that the proper party defendant in an ERISA claim for benefits "is the party that is shown to control administration of the plan." *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 672 (S.D. Ohio 2002) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)).  Here, the Plan document identifies the Company as the "Plan administrator" responsible for controlling the administration of the Plan. (SAC, Ex. A at 4-5).  Defendants do not dispute that the Company, in its capacity as Plan administrator, is a proper party defendant to an ERISA claim for benefits.

Similarly, the Plan is not a proper party defendant to the ERISA breach of fiduciary duty claim because breach of fiduciary duty claims must be brought against plan fiduciaries.  *See* 29 U.S.C. § 1109 (providing that a "fiduciary" is "personally liable" for "losses to the Plan" caused by the fiduciary's breach of "any of the responsibilities, obligations, or duties imposed … by this title….").  Under ERISA, the plan administrator is a fiduciary, *see, e.g.*, *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 910 (6th Cir. 1988), but the Plan itself is not.  *See* ERISA § 3(21), 29 U.S.C. § 1003(21) (setting forth a definition of the term "fiduciary" that does not include the benefit plan).  As such, the Plan is not a proper party defendant to Count Two of the SAC.

Nor is the Plan a proper party defendant to an ERISA § 510 claim.  In the Sixth Circuit, an ERISA § 510 claim must allege that an adverse employment action was taken against the plaintiff because the plaintiff availed himself of an ERISA right or that the plaintiff's attainment of an ERISA right was interfered with by prohibited employer conduct.  *Coomer v. Bethesda Hosp.*, *Inc.*, 370 F.3d 499, 506 (6th Cir. 2004).  Moreover, "a plaintiff must show his employer had the specific intent to violate ERISA, and [ERISA § 510] requires that the discrimination 'affect the individual's employment relationship in some substantial way.'"  *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 759 (E.D. Ky. 2010) (quoting *West v. Butler*,

621 F.2d 240, 245 (6th Cir. 1980), and citing *Walsh v. United Parcel Serv.*, 201 F.2d 718, 728

(6th Cir. 2000) (emphasis added)).  An ERISA § 510 claim, in other words, must be based upon

some action taken by the participant's employer in its capacity as an employer.  Inasmuch as the

Plan was not Plaintiffs' employer (nor have Plaintiffs so alleged), the Plan is not a proper party

defendant to Count Three of the SAC.

> **2.      The Claim For Benefits Under ERISA (Count One) Fails to State a Claim Upon Which Relief Can Be Granted.**

Plaintiffs' claim for benefits under ERISA (Count One) against both Defendants fails for

four independent reasons.

> **a.      The Company Has Exercised Its Discretionary Authority Under the Plan to Not Pay Severance Benefits to Salaried Employees Transitioning to FBP.**

Count One fails to state a claim upon relief can be granted because severance benefits

under the Plan are discretionary and the Company has exercised that discretion to decide that

severance benefits would not be paid to Plaintiffs and other putative salaried class members who

have or will be transitioning their employment to FBP.  By its express terms, the Plan provides

that "[t]he Company has the sole *discretionary* authority to determine who is eligible for

severance benefits."  (Plan at 1; underlining in original, emphasis added).  Whenever the

Company does decide to provide severance benefits, the Plan further provides that the amount of

such benefits "will be determined by the Company, in its discretion."  (*Id.*).

The SAC alleges that "Defendants have declared that they will not make severance

payments" to Plaintiffs and other putative class members.  (SAC ¶ 57).  Attached as Exhibit F to

the SAC is the Company's August 2010 communication to salaried employees at Portsmouth

explaining the reasons why it was not exercising its discretion to pay severance benefits (Dkt.

26-6):

The Company views severance benefits as a bridge for departing employees who do not have substantially comparable employment opportunities after they leave the Company. That is not the case in connection with the transition to FBP.  Severance benefits in this situation are not warranted and in accordance with the Plan, the Company has determined that they will not be available.

Severance benefits provided by ERISA welfare plans, like the Plan before the Court in this case (*see* Plan at 5), are not vested benefits.  *See Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947-48 (6th Cir. 1990) (noting that severance benefits are "unaccrued, unvested benefits" and explaining that "Congress chose not to impose vesting requirements on welfare benefit plans for fear that placing such a burden on employers would inhibit the establishment of such plans.").  Because severance benefits are not vested, they can be modified or even eliminated at the discretion of the plan sponsor.  *See*, *e.g.*, *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577-78 (3d Cir. 2006) (holding that severance benefits can be modified or eliminated *even after employees are notified of their impending terminations*).  Further, plan sponsors may design severance plans to be completely discretionary, with the plan sponsor reserving the exclusive right to decide on a case-by-case basis whether severance benefits will be provided.  *See*, *e.g*., *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3d Cir. 1991) (holding that a severance plan reserving the employer's right to "alter, reduce or eliminate" severance benefits "in an individual case or more generally," was perfectly consistent with ERISA); *Cutting v. Jerome Foods, Inc.*, 820 F. Supp. 1146, 1152 (W.D. Wis. 1991) ("ERISA creates no substantive requirements for employee welfare plans and [an] employer can provide benefits on [a] case by case basis") (citing *Hamilton*, 945 F.2d at 78).

The Plan here made eligibility for severance benefits and severance benefit amounts completely discretionary, as is allowed under ERISA.  Because the Company permissibly exercised its discretion to not pay severance benefits to salaried employees who receive job offers from FBP and informed salaried employees at Portsmouth of that decision (*see* SAC Ex.

F), Count One of the SAC necessarily fails to state a claim upon which relief can be granted.[2]

Plaintiffs' allegations of technical deficiencies in the Company's communications to salaried employees (*see* SAC ¶¶ 103-06, 107-14) do not change this result.  Courts in the Sixth Circuit follow "the rule that plan administrators need only substantially comply with ERISA notice requirements."  "To decide whether there is substantial compliance, courts consider all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances."  *Marks v. Newcourt Credit Group*, 342 F.3d 444, 460 (6th Cir. 2003) (internal citations omitted).  According to the Sixth Circuit, this rule comports with the "essential purpose of [ERISA] § 503 – notifying [plan participants] of [the administrator's] reasons for denying [their] claims and affording [them] a fair opportunity for review."  *Id.*

Here, there is no question that the Company's August 2010 communication let salaried employees know in no uncertain terms that if they received job offers from FBP, they would not be receiving severance benefits.  The communication also informed them of their right to file administrative appeals; it advised them that, if they did so, they should set forth their reasons for believing they should be paid severance benefits; and, it told them to whom the appeals should be directed.[3]  The Company's communications were straight forward, written in plain English, and gave all salaried employees clear notice of their rights and obligations – plainly satisfying the notice requirements of *Marks*.

But even if the Company's communications failed to satisfy the *Marks* requirements,

---

[2]  Because the Plan is a discretionary severance plan, the Court does not need to decide the appropriate standard of review of the denials of the administrative appeals filed by Plaintiffs Kramer and Collier.  (*See* SAC Exs. G-N, Dkt. 26-7 – 26-14).  Count One fails to state a claim even if the Court reviewed the Kramer and Collier denials on a de novo basis.

[3]  Plaintiffs Kramer and Collier invoked the appeals process.  Plaintiff Bailey did not, not because he did not understand the Company's communications, but rather because he thought an appeal would be futile.  (SAC ¶ 89).

Count One must still be dismissed.  Plaintiffs' legal arguments cannot change three immutable and outcome-determinative facts:  (1) the Plan governs the payment of ERISA severance benefits; (2) the Plan leaves the payment of severance benefits entirely in the discretion of the Company; and, (3) the Company has exercised its discretion to not pay severance benefits.  Count One, accordingly, must be dismissed.

> **b.  The HR Document Is Not the Plan, and It Does Not Govern the Payment of Plan Benefits.**

Plaintiffs incorrectly allege that an external document – the HR Document (SAC Ex. B, Dkt. 26-2) – governs the payment of Plan benefits and participants' rights under the Plan, and that Defendants should be estopped from asserting otherwise.  (SAC ¶¶ 68, 71-73).  The HR Document, however, is not the actual Plan.  By its own terms, it is a general human resources document that provides guidelines "regarding termination of employment…."  (SAC Ex. B at 3).

Although the Plan references the HR Document in two places, neither reference supports Plaintiffs' claim for benefits under ERISA.  The Plan states in the "Benefits" section that the Company <u>may</u> use the HR Document to determine the amount of severance, but only for an employee who has already been determined by the Company in its discretion to be eligible for Plan benefits.  Thus, the Plan provides that:

> The <u>amount</u> of your severance pay will be determined by the Company, in its discretion, based on your years of service with the Company, or any other criteria, including the provisions of Human Resources Standard Practice – *Termination of Employment*, that the Company decides to apply.  Any and all methods that may be adopted by the Company for determining the <u>amount</u> of benefits are not required to be uniform for you and other employees of the Company.

(Plan, Dkt. 26-1 at 1, emphasis added).

The other Plan reference to the HR Document makes clear that the HR Document does not govern eligibility for severance benefits.  The second paragraph of the Plan states, "<u>this Plan</u>

supersedes and takes the place of the Human Resources Standard Practice – *Termination of Employment*. This means you are not entitled to any severance or termination benefits from the Company under policies and procedures other than as provided under this Plan." (SAC Ex. A at 1, emphasis added). The Company's August 2010 communication that transmitted copies of the Plan to salaried employees at the Portsmouth site (SAC, Ex. F) reinforced this point. The communication stated, "[t]he Plan is the only means by which the Company provides severance benefits to its departing salaried employees."

The Supreme Court recently held in *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011), that an ERISA plaintiff may sue to enforce the terms of a benefit plan, but he/she may not sue to enforce company disclosures that purport to summarize or describe benefit plan terms. In the words of the Supreme Court, "information *about* the plan provided by those disclosures is not itself *part of* the plan." *Id.* Consistent with the Supreme Court's holding in *Cigna*, Plaintiffs may not rely on the HR Document to create enforceable rights to severance benefits from the Plan.

        c.      **Plaintiff Bailey and Other Putative Class Members Have Not Exhausted Their Administrative Remedies.**

Count One of the SAC purports to invoke ERISA § 502(a)(1)(B)[4] as a basis for Plaintiffs' claim for severance benefits. In the Sixth Circuit, participants and beneficiaries must exhaust internal plan administrative remedies before they are permitted to bring an action under ERISA § 502(a)(1)(B). *See Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994) ("[T]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.") (quoting *Miller v. Metropolitan Life Ins.*

---

[4] ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a civil action to be brought by a participant or beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan."

-10-

*Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).[5]  The exhaustion requirement reflects Congress' intent to encourage resolution of benefit claims at the administrative level.  *See Costantino*, 13 F.3d at 974.

The Plan document contains express provisions for appealing denied claims to the Plan administrator.  With respect to appeals, the Plan expressly provides:

> If your claim has been denied and you wish to appeal the denial, you must file with the Plan Administrator a notice of your desire to appeal the denial. You must file this notice within 60 days of the date that the Plan Administrator notifies you that your claim is denied.  The notice must be in writing and must specify all of the facts upon which the appeal is based.
>
> \*   \*   \*
>
> Only an appeal that you make in writing will be considered.  All other possible claims and appeals will be considered waived, which means that you will have given them up and will not be able to make them at any other time.

(SAC, Ex. A at 3).

Plaintiffs concede that these appeals procedures exist and acknowledge that Plaintiffs Kramer and Collier invoked the procedures by filing administrative appeals.  (SAC ¶¶ 76-85). Bailey, however, did not.  The SAC incorrectly asserts that Bailey exhausted his administrative remedies by making a verbal claim for benefits that was "accepted and denied" by Defendants in Exhibit F to the SAC.  (SAC ¶¶ 87-89).  Exhaustion is not satisfied by making a simple verbal claim for benefits.  Bailey should have filed a timely, written administrative appeal of the claim denial and created an administrative record so that the Company could consider all of his individual reasons for believing he was entitled to severance benefits.  Cursory allegations about exhaustion do not satisfy federal court pleading requirements.  *See Malaney v. AT&T Umbrella Benefit Plan No. 1*, 2010 U.S. Dist. LEXIS 130029, \*14 (S.D. Ohio Dec. 9, 2010) ("conclusory

---

[5]  *See also Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005) ("It is well-settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing suit for recovery on an individual claim…."); *Malaney v. AT&T Umbrella Benefit Plan No. 1*, Case No. 2:10-cv-401, 2010 U.S. Dist. LEXIS 130029, at \*11 (S.D. Ohio Dec. 9, 2010).

allegations are insufficient to plead facts necessary to establish that she has in fact exhausted her administrative remedies….").

Furthermore, Bailey's failure to exhaust cannot be excused as "futile."  (SAC ¶ 89).  The Sixth Circuit has held that the "administrative futility doctrine" is "quite restricted" and is generally applied only "in two scenarios: (1) when the 'Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it,' and (2) when the defendant 'lacks the authority to institute the [decision] sought by Plaintiffs.'"  *Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006) (internal citations omitted).  Neither scenario is present in Bailey's case.  Bailey is not challenging the legality of the Plan, only its interpretation.  Moreover, there is no allegation that Defendants lack the authority to award Plan benefits (otherwise, Plaintiffs would likely not have sued them in the first place).  Bailey's attempt to invoke the futility doctrine should be rejected.

### d.    Plaintiffs' Claim for Benefits Cannot Be Brought Under ERISA § 502(a)(3).

Count One of the SAC also purports to invoke ERISA § 502(a)(3) as a basis for Plaintiffs' claim for severance benefits.  Plaintiffs allege that ERISA § 502(a)(3) is applicable "to the extent the relief requested is equitable rather than legal." (SAC ¶ 145).  This assertion is legally incorrect.  ERISA § 502(a)(3) does not authorize claims for benefits from an ERISA plan.  It is a "catchall" provision that provides plaintiffs with a remedy for breach of fiduciary duty where no other adequate remedy is available under ERISA.  *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  The Sixth Circuit and numerous other courts have held that an ERISA § 502(a)(3) claim may not be brought if the relief sought is duplicative of that available elsewhere in ERISA § 502(a). *See id.*; *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 615 (6th Cir. 1998); *Marks v. Newcourt Credit Group*, 342 F.3d 444, 454 (6th Cir. 2003); *Tackett v. M&G*

*Polymers USA, LLC*, 561 F.3d 478, 492 (6th Cir. 2009).[6]

When severance benefits are alleged to be due and owing, as is the case here, the proper cause of action to recover the benefits is under ERISA § 502(a)(1)(B).  The Sixth Circuit explained in *Tackett*, 561 F.3d at 492, that a claim for benefits and for a declaration of rights under a health plan are "remedies cognizable under [ERISA §] 502(a)(1)(B)."  Accordingly, "further equitable relief pursuant to [ERISA §] 502(a)(3) is unavailable."  The Sixth Circuit also made clear in *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 615 (6th Cir. 1998), and in *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (6th Cir. 1998), that relief under § 502(a)(3) is not available even when a plaintiff's ERISA § 502(a)(1)(B) claim for benefits is unsuccessful.

The SAC makes several additional and flawed allegations about the availability of two types of equitable relief (specifically equitable estoppel and plan reformation) under ERISA § 502(a)(3).  (*See* SAC ¶¶ 135, 146-48).  None of these allegations survive the Sixth Circuit holdings in *Wilkins*, *Marks*, *Tackett*, and *Tolson*.  These additional allegations fail for other reasons as well.

The SAC asserts, for example, that Defendants should be estopped from "refusing to honor their promise to pay severance benefits to Plaintiffs," "denying severance benefits by relying on documents not provided to Plan participants," and "refusing to follow the guidelines detailed in documents provided to Plan participants…."  (SAC ¶¶ 146-47).  In other words, Plaintiffs argue that Defendants should be estopped from applying and enforcing the actual and

---

[6]  *See also McGuire v. International Paper Co. Retiree Service Ctr.,* Case No. 1:09-cv-740, 2011 U.S. Dist. LEXIS 25148, at *15 (S.D. Ohio Jan. 28, 2011) (recommending dismissal of an ERISA § 502(a)(3) claim because it was duplicative of plaintiff's ERISA § 502(a)(1)(B) claim for benefits), adopted by 2011 U.S. Dist. LEXIS 24823 (S.D. Ohio Mar. 10, 2011); *Wray v. Fleck*, Case No. C-1-08-852, 2010 U.S. Dist. LEXIS 21196, at *14 (S.D. Ohio Mar. 9, 2010) (dismissing an ERISA § 502(a)(3) claim where plaintiff was permitted to challenge a plan administrator's denial of benefits under ERISA § 502(a)(1)(B)); *Korotynska v. Metro Life Ins. Co.*, 474 F.3d 101, 105, 107 (4th Cir. 2006); *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1072-73 (11th Cir. 2004).

unambiguous terms of the Plan.  The Sixth Circuit expressly rejected this argument in *Marks*:

> A party cannot seek to estop the application of an unambiguous written provision in an ERISA plan, however.  *Id.* at 404.  When a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan.  *Id.* Moreover, "to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves." *Id.*

342 F.3d at 456 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998)).  The Plan unambiguously gives the Company the sole discretion to determine who is eligible for benefits and provides that it – and it alone – governs benefit payment.  Thus, Plaintiffs cannot attempt to estop the application of the Plan's unambiguous terms.  Furthermore, Plaintiffs have not alleged the "detrimental and justifiable reliance" element of an equitable estoppel claim under Sixth Circuit law.  *See Marks*, 342 F.3d at 454.  For example, the SAC contains no allegations that Plaintiffs did something they would not otherwise have done because they thought the Company would pay them severance if FBP took over.  For these reasons, the SAC fails to state a claim for equitable estoppel.

The SAC also fails to allege facts that would support a reformation remedy.  The SAC asserts that the Supreme Court's *Cigna Corp.* decision holds that plan reformation is an available remedy under ERISA § 502(a)(3).  (SAC at #135 n.1).  *Cigna's* discussion about reformation is clearly dicta.  *See Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1884 (2011) (Scalia, J., concurring).  Even if that was not the case, the SAC still fails to plead facts that would establish entitlement to a reformation remedy.  While the Sixth Circuit does not appear to have addressed the elements of an equitable claim for reformation, under Ohio law, reformation is "available on the grounds of either mutual mistake or fraud."  *QSI-Fostoria DC, LLC v. Gen. Elec. Capital Bus. Asset Funding Corp.*, No. 3:02-cv-7466, 2005 U.S. Dist. LEXIS 521, at *14 (N.D. Ohio Jan. 14,

2005).[7]  Mutual mistake is defined as "the mistake of all parties to the contract" and must be

proven by "clear and convincing evidence."  *Id.* at \*14.  Thus, reformation involves a two-part

test: 1) whether there was a mutual mistake; and 2) if so, what did the parties mutually intend.

*Id.* at \*15 (citing *Cigna Ins. Co. v. Cooper Tire & Rubber, Inc.,* 180 F. Supp. 2d 933, 935 (N.D.

Ohio 2001)).  As Justice Scalia explained in his concurring opinion in *Cigna Corp.*,

"[r]eformation is meant to effectuate mutual intent at the time of contracting, and that intent is

not retroactively revised by subsequent misstatements."  131 S. Ct. at 1885.

There are no allegations of mutual mistake in the SAC.  On the contrary, the only

allegations of mistake are one-sided and involve Plaintiffs, who apparently erroneously believed

that the HR Document was the source of their severance benefits.  (SAC ¶¶ 68-72).  Plaintiffs

have not alleged a mistake on the part of Defendants, nor could they.  The Plan language clearly

states that the Plan trumps the HR Document as well as prior plans and Company termination

policies: "[T]his Plan supersedes and takes the place of any previous severance plan, severance

plan summary plan description, [and] termination policy including the relevant provisions of the

[HR Document], or similar procedure followed by the Company."  (Plan, Dkt. 26-1 at 1).

Accordingly, the SAC fails to state a claim for reformation.

For all of these reasons, Plaintiffs' claim for benefits under ERISA § 502(a)(3) should be

dismissed.

### 3.    The Breach of Fiduciary Duty Claim (Count Two) Fails To State A Claim Upon Which Relief Can Be Granted.

Count Two of the SAC, which purports to be a claim for breach of fiduciary duty, fails

for all of the reasons set forth in the discussion of ERISA § 502(a)(3) immediately above.  The

---

[7]  The *QSI Fostoria* court cited *Wagner v. National Fire Ins. Co.*, 8 N.E.2d 144 (Ohio 1937) and *Kungle v. Equitable Gen. Ins. Co.*, 500 N.E.2d 343 (Ohio Ct. App. 1985), for support.  *See also* 2 D. Dobbs, Law of Remedies § 11.6(1), at 743 (2d ed. 1993) ("Where parties agree on a contract, but write it down in a way that materially departs from their true agreement, the writing may be reformed by a court having equity powers….").

relief requested in Count Two (SAC at 28) – fiduciary removal, injunctive relief, and appointing an independent fiduciary to pay benefits as Plaintiffs thinks they should be paid – all relate to the same objective, the payment of severance benefits from the Plan.  Sixth Circuit law mandates dismissal in this circumstance.  *See Tackett v. M&G Polymers USA, LLC*, 561 F.3d 478, 492 (6th Cir. 2009). [8]  The Sixth Circuit precedents that prohibit duplicative breach of fiduciary duty claims follow the instruction of the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  In *Varity*, the Supreme Court dismissed a concern that its holding would allow "lawyers … [to] complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing."  To assuage that concern, the Supreme Court explained that:  "[w]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate' [within the meaning of § 502(a)(3)]."  *Id.*

Count Two also fails because the so-called "breach" relates to the decision to deny benefits and the Plan unequivocally reserves to the Company the discretion to decide whether benefits will be provided.  Thus, ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), makes clear that fiduciaries have a duty to follow the terms of the "documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV."  And, as previously established (*supra* at 7), discretionary severance plans are perfectly consistent with ERISA.  In *Hamilton v. Air Jamaica, Ltd.*, 945 F. 2d 74, 78 (3d Cir. 1991), the Third Circuit rejected the argument "that permitting employers to make individual

---

[8]  *See also Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies."); *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (6th Cir. 1998) (plaintiff's efforts to segregate his breach of fiduciary duty claim from his claim for benefits was "woefully unavailing. … Because this relief was available and, indeed, utilized, it would be inappropriate for the Court to fashion any further equitable relief under Section 1132(a)(3).  The simple fact that Tolson did not prevail on his claim under Section 1132(a)(1) does not make his alternative claim under Section 1132(a)(3) viable.") (internal quotations to district court decision omitted).

benefit determinations will render the protections of ERISA illusory" because "[e]nforcing Air Jamaica's reservation [of the right to determine benefits on a case-by-case basis] does not subvert any of … [ERISA's] objectives.  Unlike employees who rely on some informal 'understanding' about what their benefits are, Air Jamaica's employees are on notice that they have no guaranteed benefits."  Here, the Company's salaried employees were put on notice that severance benefits under the Plan are discretionary when the Company notified them that severance benefits would not be paid and attached copies of the Plan document to that communication.  Moreover, "adherence to an ERISA controlled plan is not a breach of fiduciary duty."  *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 225 (4th Cir. 1998)).[9]  A breach of fiduciary duty claim under Count Two therefore fails on the facts pled in the SAC.[10]

### 4.    The ERISA § 510 Claim (Count Three) Fails to State a Claim Upon Which Relief Can Be Granted.

ERISA § 510, 29 U.S.C. § 1140, prohibits discrimination against a participant or beneficiary for exercising any right to which he is entitled under an employee benefit plan's terms or interference with a participant's attainment of any right under the plan's terms.  To prevail under ERISA § 510, a plaintiff must plead and prove "a prima facie case by showing the

---

[9]  *See also Kress v. FELRA Health and Welfare Fund*, 285 F. Supp. 2d 678, 684 (D. Md. 2003) ("A claim for breach of fiduciary duty will not lie 'where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than an interpretation and application of ERISA.'") (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).

[10]  Although Plaintiffs do not appear to seek damages for the alleged breach of fiduciary duty (*see* paragraph D in the SAC's prayer for relief), we note that damages would not be available in any event because Plaintiffs are not seeking to recover on behalf of the Plan.  ERISA § 502(a)(2) is the enforcement provision of ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires a breaching fiduciary to "make good such plan" any losses to the plan sustained as a result of the fiduciary's conduct and to "restore to such plan" any profits the fiduciary derived from the illegal use of plan assets.  Consistent with the plain text of ERISA § 409, the Supreme Court held in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 140-44 (1985), that Section 409 and its companion enforcement provision ERISA § 502(a)(2) provide relief for a plan only and not for individual participants.  *See also Weiner v. Klais and Company, Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997) (citing *Russell* and stating that "[t]his court has held that although an individual may bring a section 409 claim, ERISA does not permit recovery by an individual who claims a breach of fiduciary duty."); *Wray v. Fleck*, No. C-1-08-852, 2010 U.S. Dist. LEXIS 21196, at *14 (S.D. Ohio Mar. 9, 2010) (dismissing the ERISA § 502(a)(2) claim and stating that a "beneficiary cannot pursue relief 'for individual injuries distinct from plan injuries' under [ERISA §] 502(a)(2)….") (internal citations omitted).

existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (internal citations and quotations omitted).  A plaintiff must also show that his employer "had a specific intent to violate ERISA."  *Id.* (quoting *Humphreys v. Bellaire Corp.*, 96 F.2d 1037, 1043 (6th Cir. 1992)).

The SAC fails to allege facts that show prohibited conduct by the Company, a specific intent by the Company to violate ERISA, or any sort of a causal connection between the Company's alleged activities and severance benefits under the Plan.  The "prototypical" ERISA § 510 case involves an employer who is alleged to have terminated an employee for the purpose of preventing the employee from vesting in an employee benefit, such as a pension.  *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990); *see also Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 509 (6th Cir. 2004) (quoting *Mattei v. Mattei*, 126 F.3d 794, 798 (6th Cir. 1997)).  There is no analogy to the prototypical case whatsoever on the facts presented here.

The termination of Plaintiffs' employment following the Company's cessation of operations at the Portsmouth facility is the only possible adverse employment action that could have been taken against them.  But Plaintiffs have not alleged that the Company terminated their employment for the purpose of depriving them of a right to severance benefits.  In fact, Plaintiffs agree in the SAC that their termination "result[ed]" from the DOE's award of the contract for the decommissioning and decontamination of the Company's Portsmouth facility to FBP – something that was completely outside of the Company's control (and was not the Company's preference).  (SAC ¶¶ 28-29).  Clearly, the Company's termination and transition of Plaintiffs to FBP was solely motivated by the loss of the government contract and not by any intent to deprive them of severance benefits.  Accordingly, there is neither prohibited employer conduct

nor the requisite intent to violate ERISA.

A recent Seventh Circuit decision in *Naumann v. Abbott Labs.*, 2012 U.S. App. LEXIS 2086 (7th Cir. Feb. 3, 2012), is instructive on the intent issue.  The plaintiffs in *Naumann* brought an ERISA § 510 claim after Abbott spun off one of its divisions to form a new company. The new company provided the plaintiffs with a different, and allegedly inferior, benefit package.  The Seventh Circuit affirmed judgment for defendants because the plaintiffs failed to present evidence that the employment action – the spin off and transition of employment to the new company – was motivated by Abbott's specific intent to interfere with plaintiffs' attainment of employee benefits.  The Seventh Circuit said that "a desire to frustrate benefits played no role in the defendants' actions."  *Id.* at **9-12.

The factual parallels between *Naumann* and this case are close. The plaintiffs lost in *Naumann* because they failed to offer proof that Abbott spun off the division and transferred employees to avoid paying Abbott benefits.  Plaintiffs should lose here because they have not and cannot allege that the Company lost the government contract and transitioned employees to FBP to avoid paying severance benefits.

Finally, the allegations that the Company "pressured" Bailey and other employees to sign resignation letters so as to avoid the existence of an involuntary reduction in force (SAC ¶¶ 52-55) are simply red herrings.  An involuntary termination of employment is not a precondition to benefits under the Plan.  The Plan provides that salaried employees may be eligible for benefits if they are either "*voluntarily or involuntarily* terminated for reasons other than cause and solely as a result of a Reduction in Force."  (Plan at 1, emphasis added).

Accordingly, the ERISA § 510 claim under Count Three should be dismissed.

IV.     **CONCLUSION**

For the reasons set forth above, Defendants respectfully ask the Court to dismiss the

Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and grant

Defendants their attorneys' fees and costs and any other appropriate relief.

Dated:   March 9, 2012                              Respectfully submitted,

/s/ Simon J. Torres
Jeremy P. Blumenfeld (Trial Counsel)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  215.963.5258
Facsimile:  215.963.5001
jblumenfeld@morganlewis.com

Donald L. Havermann (admitted *pro hac vice*)
Simon J. Torres (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  202.739.3000
Facsimile:  202.739.3001
dhavermann@morganlewis.com
storres@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2012, a copy of Defendants' Motion to Dismiss the Second Amended Complaint and Memorandum of Law in Support Thereof was served on the following by operation of the Court's CM/ECF system:

Danny L. Caudill, Esq.
Robert J. Beggs, Esq.
Greg R. Mansell, Esq.
BEGGS CAUDILL, LLC
1675 Old Henderson Road
Columbus, OH   43220-3644

Danny.Caudill@BeggsCaudill.com
John.Beggs@BeggsCaudill.com
Greg.Mansell@BeggsCaudill.com

*Attorneys for Plaintiffs*

/s/ Simon J. Torres
Simon J. Torres