**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER D. BAILEY, THOMAS A. KRAMER, BRET COLLIER, Individually, on behalf of all others similarly situated, and for the benefit of the Plan,**<br><br>　　**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES ENRICHMENT CORPORATION, et al.,**<br><br>　　**Defendants.** | **Case No. 2:11-CV-0554**<br><br>**JUDGE PETER C. ECONOMUS**<br>**Magistrate Judge Norah M. King**<br><br>**OPINION AND ORDER** |

This matter is before the Court for consideration of Defendants United States Enrichment Corporation and Severance Plan for Salaried Employees of United States Enrichment Corporation's Motion to Dismiss the Second Amended Complaint. (Doc. # 27.) In the Second Amended Complaint (doc. # 26), Plaintiffs Christopher D. Bailey, Thomas A. Kramer, and Bret Collier bring three claims arising under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Specifically, Plaintiffs bring the action on behalf of themselves and all participants and beneficiaries of the Severance Plan for Salaried Employees of United States Enrichment Corporation. For the following reasons, Defendants motion is **GRANTED.** Plaintiffs Motion for Class Certification (doc. # 35) is dismissed as **MOOT.**

**I.　BACKGROUND**

According to the Second Amended Complaint, Defendant USEC Company ("USEC" or "the Company") maintained a facility in Portsmouth, Ohio, where Plaintiffs and putative class members were salaried employees. (Second Amended Complaint, ¶ 13.) The Company

established the Severance Plan for Salaried Employees of United States Enrichment Corporation ("the Plan") as a self-insured ERISA welfare plan with an effective date of May 18, 1999. (*Id.*, Exh. A.) According to its summary plan description,[1] the Plan provides for severance benefits under certain conditions, as stated therein:

> You **may** be eligible for severance benefits under the Plan, including severance pay, if you are a salaried employee, **as defined by the Company**, who is voluntarily or involuntarily terminated for reasons other than cause and solely as a result of a Reduction in Force. You **may** also be eligible for severance benefits under the Plan, including termination pay, if (i) you are a salaried employee who has received long term disability benefits from the Company for 24 months, (ii) the Company determines, in its discretion, that you are totally disabled, and (iii) you are voluntarily or involuntarily terminated for reasons other than cause as a result of a Reduction in Force. <u>**The Company has the sole discretionary authority to determine who is eligible for severance benefits.**</u>

(*Id.*, Exh. A, page 1, bold emphasis added; underlining in original.)

Sometime in August 2010, the Company initiated a reduction in force ("RIF") of its employees. (*Id.*, ¶ 29.) Plaintiffs and putative class members were USEC salaried employees who were subject to the RIF and, ultimately, were re-employed by Fluor-B&W Portsmouth LLC "Fluor"). Before actual terminations began, the Company—apparently in response to queries about available severance benefits—sent a letter addressed to "Portsmouth Site Salaried Employees" ("the Letter") clarifying the terms of the Plan as follows:

> **The Company has determined** that the salaried employees who transition their employment to [Fluor] will receive employment with [Fluor] where continuity of employment with credit for prior length of service is preserved under substantially equal conditions

---

[1] Plaintiffs do not attach a complete copy of the Plan to the Second Amended Complaint. However, there is no dispute that the summary plan description accurately sets forth the Plan's provisions. In addition, there is no dispute that the Plan falls within ERISA's purview.

2

> of employment. The Company views severance benefits as a
> bridge for departing employees who do not have substantially
> comparable employment opportunities after they leave the
> Company.

(*Id.*, Exh. F, emphasis added.) In other words, the Company determined that any salaried USEC employee who transitioned his or her employment to Fluor was, by definition, employed under "substantially equal conditions of employment" and, therefore, not eligible for severance benefits.

Even so, the gravamen of Plaintiffs' complaint is that, despite their employment at Fluor, they *do* fall within the scope of eligibility. In support of this assertion, they first argue that that Plan guarantees participation to salaried employees who were terminated solely as a result of the RIF. (Mem. In Opp., page 12.)

> The Plan therefore provides a definition for who is eligible to
> receive severance, states that those employees *will* receive
> severance, and gives Defendants the discretion to interpret the
> criteria it has established for eligibility. It does not give
> Defendants unfettered discretion to deny benefits to employees
> who are "eligible" under the criteria set forth in the Plan, as they
> claim.

(*Id.*, citing to Exh. A, emphasis sic.)

Plaintiffs also point to a document titled "Human Resources Administration, Termination of Employment." (Second Amended Complaint, Exh. B.) This document (hereinafter referred to as the "HR document") sets forth general guidelines regarding reduction in force occurrences. Plaintiffs cite to Section 6.3 which states: "Employees who are laid off because of an [Involuntary Reduction in Force] *shall* receive a severance pay" calculated under a particular formula. (*Id.*, page 7, emphasis added.) Other noteworthy sections of the HR document state:

> 6.3.4 Salaried employees must sign and return a "General Release
> and Waiver" in order to receive a severance payment under any of
> the provisions of this practice.

3

> 6.3.5 Severance pay benefits are not payable when an employee is employed by or receives an offer of employment where continuity of employment with credit for prior length of service is preserved under substantially equal conditions of employment.

(*Id.*, page 10.)

Plaintiffs, on behalf of themselves and all other former salaried USEC employees who transitioned employment to Fluor, brought this action asserting three claims against Defendants: Count One, Claim for Benefits under ERISA § 502(a)(1) and (a)(3); Count Two, Breach of Fiduciary Duty under ERISA § 502 and § 409; and Count Three, Interference with Protected Rights under ERISA §§ 502, 510 and 29 U.S.C. § 1140.[2]

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

---

[2] Plaintiffs allege other facts related to their claims of breach of fiduciary duty and interference with protected rights, but as this Court finds that Plaintiffs are not eligible for benefits, all of their claims fail and a recitation of the alleged facts is not necessary. Similarly, this Court need not reach Defendants' arguments regarding proper party defendant and exhaustion of administrative remedies.

If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper. *Little v. UNUMProvident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1949 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer*, 4l6 U.S. at 236; *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004); *Mayer*, 988 F.2d at 638. The court will indulge all reasonable inferences that might be drawn from the pleading. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000); *Lewis*, 135 F.3d at 405.

### III. LAW AND ANALYSIS

ERISA provides "a panoply of remedial devices for ***participants and beneficiaries*** of benefit plans." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (citing *Massachusetts Mutual Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (internal quotation marks omitted; emphasis added). Plaintiffs assert that they and putative class members are Plan participants who are owed severance benefits and the concomitant fiduciary obligations of the Company as Plan Administrator. Defendant USEC asserts that Plaintiffs and putative class members are not Plan participants and therefore cannot state a claim for relief under ERISA. Therein lies the dispute.

Courts should interpret ERISA plan provisions "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In applying this "plain meaning analysis," a court "must give effect to the unambiguous terms of an

ERISA plan." *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996). ERISA welfare benefits are not presumed to have vested, unlike pension benefits.[3] "Until benefits have vested, employers may modify or terminate them, whether or not they have reserved the right to do so." *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 248 (6th Cir. 1996), *cert. denied*, 519 U.S. 1059 (1997). ERISA defines "participant" as follows:

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A participant may bring a civil action "(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

### A. Claim for Benefits

The Plan states unequivocally that the Company has "sole discretion" to determine eligibility. (Exh. A, page 1.) It makes no guarantees with regard to eligibility, stating only that an employee *may* be eligible if he or she is a salaried employee who is terminated by a reduction

---

[3] In *Adams v. Avondale*, the Sixth Circuit noted as follows:

Although Congress considered imposing vesting requirements on welfare benefits, it decided to limit vesting to pension plans in order to keep costs within reasonable limits. Apparently, Congress chose not to impose vesting requirements on welfare benefit plans for fear that placing such a burden on employers would inhibit the establishment of such plans. In drawing the line between employer actions subject to the fiduciary duty requirement and those not, we must avoid any rule that would have the effect of undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement. We are compelled, therefore, to reject plaintiffs' proposed rule that welfare benefits plans such as the one before us be amended or terminated only when such action would be in the best interests of the employees. . . . Instead, we employ the rule . . . that a company does not act in a fiduciary capacity when deciding to amend or terminated a welfare benefits plan.

905 F.2d 943, 947 (6th Cir. 1990), *cert. denied*, 498 U.S. 984 (1990) (internal quotation marks and citation omitted).

in force.  There is no other reasonable interpretation of "may" in this context.  The Company could have obligated itself to provide severance benefits to all—"You ***shall*** be eligible for severance benefits under the Plan if you are a salaried employee"—but it did not.  Additionally, under the terms of the Plan, the Company reserved the right to "to amend and/or terminate the Plan at any time, in any manner, for any reason." (Exh. A, page 4.)  This language underscores not only that the benefits have not vested, but also that the terms can change.

Plaintiffs agree that the Plan provides severance benefits only to "certain eligible employees" and that the Company has "the sole discretionary authority to determine who is eligible for severance benefits." (Mem. In Opp., page 12, citing to Exh. A, page 1.)  Notably, Plaintiffs point out that the Plan gives the Company "the discretion to ***interpret the criteria*** it has established for eligibility." (*Id.*, page 12, emphasis added.)  That is precisely what the Company did: it interpreted its criteria of "salaried employees who were terminated as the result of the RIF" as those who did ***not*** secure comparable employment, unlike those who were re-employed by Fluor.  As explained in the Letter to Portsmouth Site Salaried Employees:

> The Company has determined that the salaried employees who transition their employment to [Fluor] will receive employment with [Fluor] where continuity of employment with credit for prior length of service is preserved under substantially equal conditions of employment.  The Company views severance benefits as a bridge for departing employees who do not have substantially comparable employment opportunities after they leave the Company.

Plaintiffs argue that Section 6.3 of the HR document[4] requires the Company to pay severance benefits to them and to the putative class members: "Employees who are laid off because of an [Involuntary Reduction in Force] *shall* receive a severance pay" based on a particular calculation. (Exh. B, page 7, emphasis added.) However, Plaintiffs ignore another noteworthy section of the HR document that states as follows:

> 6.3.5 Severance pay benefits *are not payable* when an employee is employed by or receives an offer of employment where continuity of employment with credit for prior length of service is preserved under substantially equal conditions of employment.

(*Id.*, page 10, emphasis added.) Thus, the HR document contemplates severance benefits *not* being provided to a subclass of departing employees. That subclass is further defined by the Letter. The Letter defines "continuity of employment with credit for prior length of service is preserved under substantially equal conditions of employment" as employment at Fluor. There is no dispute that all Plaintiffs and putative class members were hired by Fluor upon termination at the Company. Further, Plaintiffs do not allege that their employment responsibilities are substantially different from their prior responsibilities at the Company. Instead, their allegations of unequal employment conditions focus exclusively on benefits—pension benefits, severance benefits, and vacation time. Plaintiffs offer no case law to support any inference that benefits such as vacation pay are the equivalent to equal-employment conditions such as title and

---

[4] Plaintiffs assert that this Court must accept as true its "allegation" that the Plan incorporated the HR document by reference, and, therefore "the terms of that document determines [sic] eligibility under the Plan." (Mem. In Opp., page 19.) In fact, this Court need not accept as true legal conclusions such as these. Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949-50. However, a discussion of contract law is not necessary at this time because even if the HR document were incorporated, its language underscores that severance benefits may not be payable to all salaried employees who are terminated under a RIF.

9

responsibility. Consequently, in the absence of allegations that their job titles and responsibilities are substantially unequal at Fluor, there is no reasonable inference to be drawn that favors Plaintiffs.

Ultimately, Plaintiffs' claim for benefits stems from their unsupported belief that *their* interpretation of eligibility is a permitted alternate definition. Yet, they offer no case law to support this proposition; nor do they offer case law to refute that the Company's "sole discretion to determine eligibility" means anything other than "sole discretion." Thus, the Company was acting within its discretion to exclude from the pool of Plan participants those salaried employees who were terminated as a result of the RIF and who transitioned employment to Fluor—in other words: Plaintiffs and other putative class members. As a result, Plaintiffs are not "participants" in the Plan and, thus, cannot state a claim for benefits.

Plaintiffs also make a claim, in the alternative, under ERISA § 502(a)(3), "under the equitable doctrine of surcharge, estoppel and any other applicable subsections of ERISA § 502 and request any and all remedies the Court deems appropriate, including, but not limited to, contract reformation." (Second Amended Complaint, ¶ 135.) Such an action may be brought by a "participant, beneficiary, or fiduciary" and, as discussed, *supra*, Plaintiffs are not participants in the Plan. Therefore, they cannot state a claim for relief.

### B. Breach of Fiduciary Duty

Nor do Plaintiffs state a claim for breach of fiduciary duty. In Count Two, Plaintiffs claim that Defendant USEC, in its capacity as Plan Administrator, breached its fiduciary duty by denying severance benefits to Plaintiffs, attempting to force Plaintiffs and other putative class members to sign resignation letters, and refusing to explain why severance benefits were not paid. (Second Amended Complaint, ¶ 154.) In addition, Plaintiffs assert that Defendants

breached their fiduciary duty by failing to perform an investigation to determine the basis of the decision to deny benefits by acting in a manner that put business interests ahead of paying severance benefits to them. (*Id.*, ¶¶ 159 – 162.)

ERISA sets forth the fiduciary responsibility with respect to employee benefits plans at 29 U.S.C. §§ 1101-1104. The statute requires the following standard of care:

> [A] fiduciary shall discharge his duties ***with respect to a plan*** solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . .

29 U.S.C. § 1104(a)(1) (emphasis added). As a threshold matter, Plaintiffs must show that the Company's definition of "eligible participant" constituted a "fiduciary act" for the purposes of ERISA. The word "fiduciary" is defined by ERISA as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the management of such plan.

29 U.S.C. § 1002(21)(A). ERISA distinguishes between the "administration" of welfare benefits plans and the "establishment," "amendment," or "termination" of the plans. As noted by the Supreme Court, "[e]mployers or other plan sponsors are generally free under ERISA, for any

11

reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1996) (citing *Adams v. Avondale*, 905 F.2d 943 (6th Cir. 1990)); *see also Musto v. American General Corp.*, 861 F.2d 897 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989) ("The case law, in any event, makes it clear that when an employer decides to establish, amend, or terminate a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards"); *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ("Because the defined functions in the definition of fiduciary do not include plan design, an employer may decide to amend an employee benefit plan without being subject to fiduciary review") (internal quotation marks omitted). Thus, the case law makes clear that by establishing the Plan and later amending or further defining eligibility, the Company did not act as a fiduciary. Plaintiffs do not make any allegations relating to the Company' management of the Plan; rather, their allegations relate to the Company's refusal to provide benefits as the result of its determination of eligibility under the Plan.

Plaintiffs' other allegations of breach of fiduciary duty also lack viability. These allegations are without factual support or, interestingly, are accompanied by contrary factual support. For example, Plaintiffs' allegation that Defendants have refused to explain why severance benefits were not paid is contradicted by many of their own exhibits: the Letter, letters denying Plaintiffs Kramer and Collier's appeals, and, to some extent, the Plan itself. In addition, their claim that Defendant attempted to force them to sign resignation letters to foreclose their access to severance benefits is refuted by the Plan, which states that a participant may be eligible whether "voluntarily or involuntarily terminated for reasons other than cause and solely as a result of a Reduction in Force."

## C. Interference with Protected Rights

Last, Plaintiffs allege that Defendant USEC interfered with "their attainment of severance benefits." (Second Amended Complaint, ¶¶164-170.) Again, Plaintiffs' claim falls well short of stating a claim for relief, primarily because as non-participants, they have no right to severance benefits under the Plan.

Even if they were participants, Plaintiffs' allegations fail to state a claim. To state a claim under ERISA § 510, a plaintiff "must show that an employer had a specific intent to violate ERISA." *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (citation and internal quotation marks omitted). ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right" to benefits. *Clark v. Walgreen Co.*, 424 Fed. Appx. 467, 474-75 (6th Cir. 2011) (quoting 29 U.S.C. § 1140). To plead a prima facie case, a plaintiff must allege the following: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* at 865 (citations and internal quotation marks omitted).

First, Plaintiffs allege that Defendants instructed human resources personnel to misrepresent their benefits status "by holding meetings to convince class members to draft and sign resignation letters in order to circumvent payment of severance under the Plan" and to threaten withholding of vacation pay" until the letters were signed. (Second Amended Complaint, ¶¶ 167 - 169.) In addition, Plaintiffs allege that Defendants attempted to "collude" with unnamed "third parties" to develop "strategies to avoid or lessen the payment of severance benefits." (Mem. In. Opp., page 37, citing Second Amended Complaint, ¶¶ 39 - 40, 42.) These vague allegations are unsupported factually and fail to make a prima facie case. This Court

13

cannot discern how Defendants were motivated to coerce Plaintiffs and others to sign resignation letters when the Plan specifically provides for severance benefits even in the event of voluntary termination. Moreover, Plaintiffs provide no factual support for their allegation that Defendants' actions were taken for the purpose of interfering with their severance rights. Mere determination that Plaintiffs were not eligible for severance benefits does not equate to an intent to violate ERISA. As a result, this Court finds that Plaintiffs failed to state a claim under ERISA § 510.

## IV. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. # 27.) Plaintiffs' Motion for Class Certification is rendered **MOOT.** (Doc. # 35.) The Court **ORDERS** that the Second Amended Complaint (doc. # 23-1) be hereby **DISMISSED.** The Clerk of Court is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

**/s/ Peter C. Economus**  
**PETER C. ECONOMUS**  
**UNITED STATES DISTRICT JUDGE**